UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THUNDER PROPERTIES, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>KATHLEEN J. TREADWAY, an individual; WELLS FARGO BANK, N.A., a national banking association; FEDERAL NATIONAL MORTGAGE ASSOCIATION, INC., a Delaware corporation; DOE individuals I through XX; and ROE CORPORATIONS I through XX,<br><br>Defendants. | Case No. 3:15-cv-00141-MMD-VPC<br><br>ORDER<br><br>(Motion to Dismiss – dkt. no. 10) |

**I.   SUMMARY**

Plaintiff acquired the property at issue at a homeowners' association foreclosure sale and now seeks to quiet title. Before the Court is Defendant Wells Fargo Bank, N.A. ("Wells Fargo") and Federal National Mortgage Association's (collectively "Defendants") Motion to Dismiss ("Motion"). (Dkt. no. 10.) The Court has reviewed Plaintiff's response (dkt. no. 32) and Defendants' reply (dkt. no. 33). The Court also heard oral argument on the constitutional challenges to NRS § 116.3116 ("the Statute") in conjunction with a similar case. (Dkt. no 42.) For the reasons discussed below, Defendants' Motion is granted with respect to Plaintiff's claim for injunctive relief and is denied with respect to the remaining claims.

## II. BACKGROUND

Plaintiff initiated this action in state court seeking to quiet title and asserting claims of unjust enrichment, equitable mortgage, and slander of title. (Dkt. no. 1-1.) Plaintiff alleges that Defendant Kathleen Treadway ("Treadway") purchased property ("Property") within the Williamsburg Townehomes Homeowner's Association ("HOA"). (Dkt. no. 1-1 ¶ 12.) Treadway obtained a reverse mortgage loan, secured by a deed of trust ("DOT"), from Well Fargo. (Dkt. no. 10 at 3.) Treadway failed to pay HOA assessments and the HOA eventually foreclosed on the Property pursuant to NRS § 116.3116. (Dkt. no. 1-1 ¶25.) Plaintiff purchased the Property at the foreclosure sale.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion, the court must determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 (9th Cir.2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (citation and internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

///
///

## IV.   DISCUSSION

### A.   The Statute

Under NRS § 116.3116, a homeowners' association can establish a "lien on a unit for . . . any assessment levied against that unit or any fines imposed against the unit's owner from the time . . . the assessment or fine becomes due." NRS § 116.3116(1). Section 116.3116 further provides that such a lien "is prior to all other liens and encumbrances on a unit except," among other categories of liens, "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." NRS § 116.3116(2)(b). The statute, however, contains an exception to this exception, allowing a homeowners' association to establish a lien that takes priority over a first security interest for unpaid assessments over a nine-month period preceding the enforcement of the lien. NRS § 116.3116.[1] The statute also sets out the procedures a homeowners' association must follow in a nonjudicial foreclosure of its lien. The parties disagree about whether the statute, at the time in question, required an association to give notice to junior lienholders, or whether junior lienholders must "opt-in" to a notice system. Recent amendments to the statute require individual notice of default and notice of sale to all lien holders of record via certified mail. S.B. 306 § 3-4, 9(1) 2015 Leg., 78th Sess. (Nev. 2015).

In 2014, the Nevada Supreme Court ruled that NRS § 116.3116 creates a "true superpriority lien" for 9 months of unpaid association assessments and certain charges. *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 419 (Nev. 2014) (en banc). Accordingly, the court further held, a nonjudicial foreclosure of an homeowners'

---

[1] Section 116.3116 was amended and reorganized in 2015. *See* 2015 Nev. Stat. 1331, 1334. The statute retains the exceptions described above, but creates a separate subsection (NRS § 116.3116(3)), which states that an homeowners' association lien may take priority over a first deed of trust for "[t]he unpaid amount of assessments . . . which would have become due in the absence of acceleration during the 9 months immediately preceding the date on which the notice of default and election to sell is recorded," in addition to certain charges and costs. NRS § 116.3116(3). To avoid confusion over the recently reorganized subsections, the Court will cite to NRS § 116.3116 generally in discussing the provisions that give a homeowners' association a first priority lien.

3

association lien under NRS § 116.3116 would extinguish any first deed of trust, so long as certain statutory notice requirements are followed. *See id.* at 411-17. Before *SFR Invs. Pool*, courts across Nevada had interpreted this portion of the statute inconsistently.

### B.  Due Process

Defendants argue that the Statute is unconstitutional because it allows for their property — their rights under the DOT — to be taken without adequate notice. They argue that the Statute provides only for "opt-in" notice, rather than mandatory notice, and that this arrangement is unconstitutional under the notice requirements necessitated when a state action affects property interest as established in *Mullane v. Central Hannover Bank & Trust Co.*, 339 U.S. 306 (1950), and *Mennonite Bd. Of Missions v. Adams*, 462 U.S. 791 (1983).

The Fourteenth Amendment provides: "No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. It thus shields citizens from unlawful governmental actions, but does not affect conduct by private entities. The "dispositive question" to a constitutional due process challenge is "whether there was state action." *Apao v. Bank of New York*, 324 F.3d 1091, 1095 (9th Cir. 2003). This threshold question is not satisfied here because the actions authorized under the Statute do not rise to the level of state action.

The Supreme Court has held that foreclosure procedures implicate the Fourteenth Amendment only where there is at least some direct state involvement in the execution of the foreclosure or seizure. *See Fuentes v. Shevin*, 407 U.S. 67, 70-71 (1972) (clerk of court made out writ of replevin authorizing seizure of property by sheriff); *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 338–39 (1969) (clerk of court issued summons at request of creditor's counsel, setting in motion garnishment of wages).

While it is true that state endorsement or enabling of private action can sometimes constitute state action for due process purposes, "[t]he existence of a state statute authorizing certain private action 'is not the final answer to the touchstone of

state action.'" *Culbertson v. Leland*, 528 F.2d 426, 429 (9th Cir. 1975) (quoting *Adams v. Southern California First National Bank*, 492 F.2d 324, 330 (9th Cir. 1973).

In fact, the Ninth Circuit has very clearly addressed whether nonjudicial foreclosures amounted to state action on more than one occasion. In *Charmicor v. Deaner*, 572 F.2d 694 (9th Cir. 1978), a corporation challenged Nevada's nonjudicial foreclosure statute on the theory that it violated the due process clause of the Fourteenth Amendment by failing to provide a pre-sale hearing. The Nevada statute allowing for nonjudicial foreclosures did not simply confirm a contractual or common law right, rather it "confer[ed] a power of sale upon the trustee." *Id.* at 695. Nevertheless, the Ninth Circuit held that "the statutory source of Nevada's power of sale . . . does not necessarily transform a private, nonjudicial foreclosure into state action." *Id.* The court concluded that Nevada's nonjudicial foreclosure statute did not constitute state action and upheld the district court's dismissal of a due process claim.

More recently, in *Apao,* 324 F.3d 1091, the Ninth Circuit revisited and explicitly affirmed its holding in *Charmicor*. The *Apao* court noted that nonjudicial sales do not involve "overt official involvement" and are neither compelled or encouraged by the statute; and while the statute may recognize and even authorize "private self-help remedy," such authorization is not enough to "convert private conduct into state action." *Id.* at 1094-1095 (citing *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 164-54 (1978)). The court further noted that any procedural issues with the foreclosures were unrelated to "the threshold [and] dispositive question as to whether there was state action." *Id.* at 1095.

The Statute here similarly lacks any overt official involvement to convert an otherwise private nonjudical foreclosure sale into state action. *See SFR Invs. Pool,* 334 P.3d at 410-12 (describing history and function of the law.) Applying *Charmicor* and *Apao*, the nonjudicial foreclosure scheme governed by the Statute cannot be considered state action for the purposes of a due process challenge. Defendants' due process argument falls short.

**C.     Takings**

Defendants also argue that the Statute violates the takings clause of the Fifth Amendment. (Dkt. no 10 at 15.) Specifically, Defendants argue that "[t]his Statute, as enacted by the Legislature (and now as interpreted by *SFR v. U.S. Bank*) is government conduct" that amounts to a taking because the Statute extinguishes their secured interest in the Property without just compensation. *Id* at 16.

Nevada adopted the Statute in 1991. 1991 Nev. Stat., ch 245 § 1-128, at 535-79; *see also SFR Invs. Pool*, 334 P.3d at 410. Defendants obtained their secured interest in the Property in 2006, which was long after the Statute's enactment. (Dkt. no 10 at 3.) Defendants cannot, and likely do not, actually argue the Statute constitutes a taking. Defendants' argument seems to be that the Nevada Supreme Court's interpretation of the Statute in *SFR Invs. Pool* changed the law and created a takings issue.

It is true that actions by the courts, just like actions by the legislative or executive branches, can constitute a taking under the Fifth Amendment. *See Stop the Beach Renourishment, Inc. v. Florida Dept. of Envtl. Protection*, 560 U.S. 702, 714 (2010). As Justice Scalia wrote in that case, "if . . . a court declares that what was once an established right of private property no longer exists, it has taken that property." *Id*. at 715. However, there is no taking unless a party can show that before a court decision they were clearly entitled to the right which the decision took away. *Id*.

Defendants cannot show any such entitlement here. At best, there was disagreement among the lower courts in this state about how the superpriority lien should be understood. As another court in this district has noted, "lenders and investors were at loggerheads over the legal effect of a hoeowners association's nonjudicial foreclosure of a superiority lien on the lender's first trust deed . . . the *SFR* decision made winners out of," those, like Plaintiff, who had invested in homeowners' associations foreclosed properties and losers out of those like Defendants who had "gambled on the opposite result." *Freedom Mortg. Corp. v. Las Vegas Dev. Grp.*, 106 F.Supp.3d 1174, 1176 (D. Nev. 2015.) In other words, the *SFR Invs. Pool* court did not

6

change the Statute or eliminate any previously announced rights by reversing an earlier decision; it simply clarified what the law meant since its enactment in 1991. Defendants' takings argument also falls short.

### D. Remaining Claims

Defendants seek to dismiss claims for unjust enrichment, equitable mortgage and slander of title. The Court agrees with Plaintiff that accepting the allegations of the Complaint as true, Plaintiff has stated a claim.

Plaintiff does not oppose dismissal of its claim for injunctive relief. (Dkt. no. 32 at 19.) Accordingly, this claim will be dismissed.

### V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is hereby ordered that Defendants' Motion to Dismiss (dkt. no. 10) is granted with respect to Plaintiff's claim for injunctive relief and is denied with respect to the other claims.

ENTERED THIS 31st day of March 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE